The disagreement in this appeal is really quite narrow. It's undisputed that the Lassiter patent discloses everything in the 757 claims except that instead of the 757's purbure or offset method of depositing tab material, Lassiter uses a nozzle spray method. Now that's only in a preferred embodiment in Lassiter. Lassiter's claims aren't limited to the spray-on method and the specification of Lassiter invites substitution by describing a specific spray-on environment, I'm sorry, embodiment, one that uses actually a cardboard box machine, and noting that any other suitable equipment can be used if desired. As the board found, the Heffel and Eaton patents disclose such alternative equipment and methods. The board found that each of those, in combination with Lassiter, discloses an alternative way of depositing nail tab material, namely the same purbure and taught that purbure and offset type print methods had recognized advantages over other methods, including they were cheaper, simpler. Why is the board, on this record, not entitled to find? You have the burden of persuasion. You just haven't persuaded us that the relevant skilled artisan would look over at the H and the E references, like Heffel and Eaton, which are, you know, potentially something somebody might look at, but they don't, in fact, involve a substrate that is either has been or is to be coated with asphalt, which is what the claim construction means. And so you just haven't proved the critical step in adding to Lassiter what is taught for different kinds of substrates by the other two references. Well, that's what the board said, and that was its conclusion, but I think its reasoning underlying that conclusion reflects some legal errors, and that's the problem. And let me start with the claim construction, because I don't think the claim construction properly understood, in fact, requires that the materials will eventually be asphalt saturated. I don't think it matters, because what matters is the condition of the material at the time that the printing, the depositing of the tab material takes place, and it's crystal clear that that can be unsaturated, including dry felt material, which is a fibrous paper made from recycled paper and cardboard. But let's talk about the claim construction, because I find it very confusing. There are references in the specification that suggest that an asphalt substrate is not required. And then on page 33 of the board's decision, we have this, what I consider a very confusing sentence, beginning, although we agree with the issue, the claim one does not require an asphalt coated substrate, and then it goes on to say we can extrude it in such and such a way. The two parts of that sentence on the face may be inconsistent. Well, I think there is, I agree with you, I think there's a non sequitur there, because we had been arguing, as the board recounts just before that, that all of Fasfeld's arguments, its experts, in fact, were focused completely on asphalt saturated substrates, and its position was it has to be asphalt saturated at the time that the tabs are applied. And so we argued, well, no, that's not what the claims mean. The board said, well, we agree with that, but then the board flipped right back to focusing on asphalt saturation. I'm trying to, I guess, get your view as to how I should interpret that sentence, which seems to be internally contradictory. The although sentence? Yeah. I think that that I'm not entirely sure how to interpret that sentence. I mean, it's the first part of it is right. It does not require an asphalt coated substrate, and so I think the board is right there, but then it seems to ignore that, and then go on and say, but we're going to look at asphalt saturated substrates anyway. I don't have any better explanation than just, I think, the board had the to apply it properly. Right, but I mean, in your brief, and here, when you seem to be referring to asphalt saturated substrates kind of as a singular thing, when the board's claim construction expressly referred to the pre and post saturation versions of that, and what it rejected was the argument that the claim construction, the claim referred only to the already saturated material, and said no, it also refers to material before it has been saturated, which I took to be a pretty clear implication that this is material that is going to be saturated. Well, I don't think that's, I don't think that's, I mean, I see, when you focus on that one sentence in the board's opinion, I can certainly see how you would draw that conclusion. I don't think it's right, though, for a couple of claims calling for an asphalt saturation step. Fasfeld had argued for one, the board has specifically rejected that, and if you look elsewhere in the board's opinion, and I'll just point to a couple of places, and for example, at page, appendix page 13, the board says there is no indication that asphalt treatment must be part of the process, or that it must occur, or that it must occur before nail tabs are applied to the roofing material. Goes on page 14, the treating an extended length of substrate language in the preamble of claim one is not a limitation. Accordingly, we find that claim one does not preclude depositing tab material onto base substrate materials that are not asphalt coated or saturated. And there are multiple other places in the board's opinion where it does not suggest that there has to be some unclaimed subsequent saturation step. And the other thing I would note is that the somewhat different point from the question, if the material that it is to be printed on is eventually going to be saturated with asphalt, what does that tell you about what the relevant skilled artisan would be looking around to to find techniques to do? And I think at the heart of this, I mean, this page 33 is really the heart of it, where it seems to me the board has said, you just haven't shown us why the relevant roofing material focused person is going to look at the clothing art. Right, understood, and here are the problems with that. First of all, this is not limited to roofing material. Every time the patent talks about asphalt, it's talking about in the context of roofing material, this patent covers roofing and building cover material. There's no indication that building cover material has to be asphalt saturated. And to the contrary, the Lassiter reference, which talks about styrofoam sheeting and styrofoam boards, it's clear that that's not asphalt saturated in the main prior art reference. So there's no indication, even if you take the board at its face value there, this patent goes beyond roofing material. It goes to building cover materials, which are not asphalt saturated. The other problem here is... That's a point that maybe I'm just misremembering, but that I don't remember that being a point of specific contention before the board, because it would have been hard for the board to write its claim construction with that before language in it, which you don't dispute if you're talking about, you know, like Tyvek, is that the... Well, that's an example. Tyvek material on the sides of buildings. Well, I would note, Your Honor, on page 33 that you were referring to up at the top, the board does note that Lassiter discloses forming nail cuts on unsaturated substrate, such as styrofoam board, etc. So the board, I mean, the point was made to the board seemed to acknowledge it, but then seemed not to follow through on it. So, you know, that's the problem with that. And I think the reason that that before coding crept into that, at least that one part of the board's claim construction, is because that's the way the issue was teed up for the board. Fassbelk was arguing, it's got to be coated or saturated at the time the tab material is applied. We were saying, no, look at the specification. It makes clear that it So that's what the board zeroed in on. There was no discussion about what happens afterwards. That simply wasn't a concern, and I think the other statements in the board's opinion put that in the proper context. That wasn't the focus, that wasn't really the point the board was making. It's not actually a point that Fassbelk has made on appeal. So when you look at the materials that are within the scope of the claims, that is, what are you printing tab material on? Yeah, tab material on. It's unsaturated things. It's dry felt, it's polyester, it's materials that are just like the materials in Heffel and Eaton. And so, and I'd also add, Your Honor, that the relevant field here is not just, excuse me, the manufacturer, pardon me, is not just a manufacturer of roofing materials, it's reviewer and offset printing. So the person of ordinary skill is familiar with both of those, and it would be perfectly logical for that person, as we argued, to look to references like Eaton and Heffel when you're dealing with printing on material that is not asphalt-saturated. The other point I would make, Your Honor, is that background references that the board ignored, like the Lahawany and Ullman patents, specifically teach that spray-on and gravure methods are alternatives when manufacturing roofing material. Lahawany, in particular, is dealing with shingles, which are asphalt-saturated, and the but the board ignored references that directly taught substituting one method of depositing polymeric material for another in the roofing material context. So even if you were just looking at someone with skill in roofing materials, references that the board ignored would have led that person to look to gravure, which had noted advantages, as a substitute for spray-on. They accomplished the same thing. But that's really the issue, is it not? What would have led them to look to gravure? Right. It was clear that the board was impressed that there was nothing that would have led to the gravure system. That's correct, and the reason the board thought there was nothing was because of this supposed limitation to asphalt-saturated materials, and let me just touch on the teaching away part of the board's opinion, which is part of this. That all depends specifically on the material being treated with hot asphalt, and being hot when the tabs were applied. Can you point to a suggestion to look to gravure? I can point to a suggestion to look to other methods, and that's in Lassiter itself, which says that, yeah, I'm using this particular spray-on machine that had been used to make cardboard boxes, but other suitable equipment can be used if desired. And Lassiter's claims, as I mentioned, aren't limited to this spray-on method. It just says deposit tab material on this, you know, this substrate. But it doesn't mention gravure. No, it does not mention gravure. This is what we have the obstacle, I think, that needs to be overcome. Well, and it's overcome, I think, by Allman and Lalani, which in the roofing context say that spray-on and roller-type gravure processes are alternatives to one another. Do they use the word gravure? And the Lalani talks about print roller method, but it's a, you know, that's the point. It's a roller method that uses contact with the substrate, which is what the board thought was the problem here. The other point I'd like to make is, on the teaching away point, first of all, it's completely limited to materials being treated with hot asphalt at the time that the tabs are applied. That's not required by these claims. The other thing I would note is that to the problem with that or something, some sense teaches away, this patent does not solve that problem. It doesn't claim any or identify any solution to it. It just, it's basically Lassiter with the substitution of standard gravure process. There's no special rollers, no special equipment, there's no, nothing that's supposed to somehow solve this problem. And an unplanned and undescribed solution to a problem, it is not evidence of non-obviousness. I'd like to save the remainder of my time if the board has no further questions. Okay. Thank you, Mr. Trello. Thank you. Mr. Brewster. May it please the court. There's an obvious difference between printing the paper... Let me tell you what my problem is. I'm not sure what the board's claim construction was, but it seems to me, looking at the claim language, which doesn't mention asphalt, and looking at the specification, that it's very hard under DRI to say that this doesn't cover material that's not asphalt-saturated. For example, in column 1, it talks about usually asphalt-saturated twice. And then, most significantly, in column 5, at line 65 and 66, it lists the kind of materials that are involved here and says whether or not coated with asphalt or an asphalt mix. So how is it, in the light of that language and the specification and the DRI standard, that you get this claim limited to asphalt-saturated material? Well, first of all, because they haven't complained about the claim interpretation. There's no... The claim interpretation... Well, let's skip over that for a moment. I'm just asking how... Assuming... Assuming how... If the board, and I don't know what the board's construction is, frankly, because of those seemingly conflicting statements on 33 and elsewhere, suppose that the board did say it has to be asphalt-saturated, that's why Lasseter teaches away. How can that be correct in the light of the claim language and this specific reference in the specification whether or not coated with asphalt? Several reasons. One, the only expert in roofing said for decades the predominant roofing cover material for wood frame construction is utilized asphalt roofing products. The purpose of a roof is to... Well, let's just stick with the... Please, let's just stick with the intrinsic evidence in trying to make a claim construction here based on the claim language and the specification. How can... How can it be under the BRI standard in the light of this very specific language in the specification that the claim is limited to asphalt-saturated? Because the claim... The claim is limited to roofing and building cover materials. The board's... I don't think there's anything unclear about the board's construction of roofing and building cover materials. It's either... You're just not answering my question. I'm sorry. I'm asking you a specific question is how can it be that these claims are construed to be limited to asphalt-saturated material when the specification says the opposite? You're... Well, it's a little unfair, Judge, to ask me how can... How to respond on the run about an argument that was never made. This argument about styrofoam... You don't put styrofoam on the roof. There's no evidence at all that you put styrofoam on the roof. You can't answer my question. No, that's what the answer is. The specification is for siding for styrofoam. Yes, you can... It says whether or not coated with asphalt or an asphalt mix. Does not that suggest that it could be without asphalt saturation? I suppose that language would suggest it could be without it, but when a person of skill in the art interprets claims, they keep in mind what the skill in the art is, and the skill in the art is not what a lawyer can figure out later. Oh, there might be a hole here. This is roofing. Roofing... Can I just ask? Mr. Trella pointed out that the claim term construed at the bottom of page 10 is roofing or building cover material, which is beyond roofing. The stuff on the sides of the building would presumably be covered. Was there an issue made out of that? Because it seems to me... Well, the board construed roofing and building cover material to be saturated before or after with asphalt. That's not one of their points on appeal. That's not one of their complaints that the interpretation of that term was wrong. So I am a little nonplussed as to how to answer that. But they do say that the board didn't interpret it to require asphalt saturation. They did not. No, the board did too. That's a question, but they certainly argue that in their view the board claim interpretation didn't require asphalt saturation, and there is that language on page 33 where the board seems to agree with the petitioner in that respect. I don't think so, Your Honor, respectfully. It says a substrate material... I'm sorry, what are you reading from? The interpretation of the roofing and building cover material. The bottom of page 10. Accordingly we interpret? Right. And it's before coating and asphalt coated or saturated substances such as tar paper. So that's the after coating. Well, what are we to understand when they say we agree with the petitioner that claim one does not require an asphalt coated substrate? Because it doesn't require the substrate to be coated with asphalt before. It does require it. But that wasn't the petitioner's argument, right? The petitioner's argument is it didn't require asphalt at all. No, that was not their argument. They never made that argument? That was not. Their argument was it didn't require it before. That's what 15 percent of the board's opinion is whether it's required to be the asphalt goes on before or after the nail tabs. 15 percent of the opinion is only about before or after. 15 percent of the opinion is not about styrofoam or non-asphalted materials. And the only expert evidence is... I thought they did argue before the board that it didn't have to be asphalt. Well, maybe you can ask opposing counsel where exactly that is. And I would warn you, of course, they say the board required a specific statement of motivation to improve. Where exactly did the board state that? The board didn't ever say that. The board noted there was... That's a different point. The question is did they argue to the board? In interpreting this language on page 33, it's important to know what they argued to the board. Did they argue to the board that the claims don't require an asphalt substrate? I thought they did, but I may be wrong about that. As you state that it doesn't require the asphalt coated substrate is there... That it doesn't have to be coated before. The argument they never made is it doesn't have to be coated before or after. Their argument is that it doesn't have to be coated before. There's obvious problems if you have to send hot asphalt through when you're trying to put the nail tabs on. But they're the same problems and additional ones if you send it to asphalt coating after you put the nail tabs on. With the time I've got left, let me just make a few statements. Was there any movement to amend the claims to restrict the broadest claims either to the gravure process which is not here at issue or to something which would have resolved the issues that we're debating? No. I mean the dispute in the patent and trade board was whether these combinations were obvious because they both involve paper. That's what the whole dispute was about. That's what the briefing was about. And what the board found is there's an obvious difference between paper in the secondary preferences and tar paper. Tar paper is a term of art. Tar paper means it's got asphalt coating on it. And what comes out of the process and goes under your shingles is tar paper. It has to have asphalt on it. That's what the only expert testimony is. So the dispute was and their briefing here is that well there's an overlap because they both use paper but they're very different types of paper. Skip through and eliminate some things here. So did you happen to remember was Owens Corning's argument about this claim construction made only in reply to your argument that the problem was before and after. And the reason is because the teaching away in Lassiter is not a teaching away from affixing nail tabs to asphalt saturated materials. It's just the opposite. Lassiter says the problem is if you apply the asphalt it's going to knock the tabs loose. It's going to melt the sprayed material. So that was itself an argument against they say oh well that doesn't teach away because it's a different process. It's putting on the tabs before you send it to the asphalt asphalting process. You create other problems as well but that's not a reason. Teaching away let me put it this way. They say the teaching away doesn't explain how they fix this. Well it's not our burden to explain how the teaching way is right or wrong. Teaching away can discourage improvements or innovations even if it's wrong. The teaching away it's their burden to have somebody who's in the roofing industry say teaching away this teaching way everybody would have known this is wrong and therefore it's not a discouragement. What do you do with the fact that the board didn't limit the person of relevant skill in the art to a roofing person? This is a particular kind of roofing person that also knows about printing processes maybe even from outside the roofing world. I'm being imprecise. You need an expert in printing and you need somebody who's an expert in roofing and they only have one in printing. Printing of course is being used here for affixing. You're not really printing a picture of a nail tab you're sticking something on it. That's got to be correct because section 103 says it's got to be obvious to a person's skill in the art of the subject matter. If it is true there are going to be certain times the background references say no. There's going to be certain times when you could spray print or you could impression print. It's probably pretty hard to find an expert who combines roofing expertise with grubber printing. I'd say that's probably right but the deal is what you can't do is leave out the art that you're trying to create. So if you want to say we're going to print on silicon chips printing would be useful but you're printing on something very small. Printing in outer space is useful but a spray printer is probably not going to work in outer space. You're going to have to know somebody who knows something about outer space. The same is true here. We're printing on roofing materials and building siding materials. Let me pick up on your last four or five words and building siding materials. I'm looking at Owen's reply brief at pages 347, 342 of the appendix where Owen says all of this talk about saturated materials, that's not in the claim. Look at Lasseter. Lasseter specifically discloses depositing nail tab material on unsaturated building cover materials such as siding materials. So I guess I'm not sure that it would be fair to say, unless you can show me something, that Owen's failed to argue to the board that non-roofing building materials, including materials that would never be saturated, were outside the scope of this claim. Step away for a moment. I'm not sure what you're referring to. Again, the board construed building and roofing materials to be saturated before or saturated after. They have not appealed or complained about that point. If I lose on that point, I'm going to lose on a point that they didn't raise. They didn't put it as an issue or complaint about what the board did wrong. The board is going to be as surprised as me that that is what, because that was the first thing they construed. As I said, it's 15 percent of the opinion. And if that's wrong, they should have said something more about that than, I'm sorry, and you said, we're on page... Well, the argument made is, I guess, starts at page 339, and then I was looking at particular... And it goes for three and a half pages. The heading is, asphalt saturated substrates can't be used to distinguish a prior art. There's no such limitation as recited in the claims. Subheading asphalt saturated substrates are not recited in the claims. And eventually, then it starts talking about the prior art. Lassiter also prints nailed tabs on unsaturated substrates, and in particular, quotes something. This is at 342, so page 6 of the reply brief, but the appendix 342, quoting Lassiter and referring not to roofing materials, but siding materials used for wrapping the side of a framed house or other structure before securing the finished siding, which... What they're arguing there is well, I see the stud wall. Of course, the stud wall is just the wood frame of the house. But this wrapping, I mean, this is what we all see when we drive around before the siding is put on this Tyvek material. I imagine there are other brands, but I'm not sure I've ever seen one. Well, this is the background facts. There's two points they complain about, what the board did wrong, and neither of those is that they misconstrued building or roofing cover materials. Well, this told me that they didn't make this argument before the board that asphalt saturation wasn't required. And Judge Geronimo has just shown you that they did make that argument. No, that does not complain. They don't make any complaint about that. They say that they are saying explicitly here that asphalt saturation is not part of the claim. They say that Lassiter also prints on unsaturated substrates. We don't dispute that. We don't dispute that. But nobody disputed the board's conclusion about what these materials were when the board wrote a 57-page opinion. Well, the question is how do I understand that statement that on page 33 where they say we agree with the petitioner that asphalt's not required. And then you said, oh, no, the petitioner only argued that asphalt wasn't required at the initial step. But that's not true. Your representation of what they argued is not correct. I stand by my argument they did not argue to the board that roofing and building cover materials needed to be construed to include styrofoam board. It is a fact that both Lassiter and Iyer had, I believe, mentioned things that would not require asphalt. But the fight on the dispute before the board was whether the asphalt had to be put on, the nail taps had to be put on before or after. That was the fight before the board. But they also argued that asphalt wasn't a requirement, period. Do you happen to recall in the, I guess what they call the oral hearing, even though it's just lawyers talking, the oral argument in front of the board panel? Was this a specific subject of discussion? And did Owen say something to the effect? Not that I recall, but it wouldn't take long to do a word Thank you. Mr. Duran. Thank you, Your Honor. Judge Duran, to pick up on your last point, in fact, it did come up at the board. And I prefer the court to, or maybe other places, but appendix page 416 and 417, this is during Owen Corning's presentation at the hearing. And if you start right at the top of that page, you can see that the argument was that indication in multiple places that the roofing or building cover material does not have to be saturated substrate. And then it goes on to talk about building cover material in particular, talking about the, it doesn't use a brand name, but he's talking about Tyvek, the white paper, that it's a synthetic weed that's a housewrap. And so he's making exactly this argument. It's the same argument essentially. Can I just assume as a background fact, would everybody agree that the sidewall building wrap never gets asphalt saturated? We certainly agree. And it's clear in Lassiter also that the sidewrap material is not asphalt saturated. In fact, the one claim, Lassiter has eight claims, seven of them are to roofing material and require saturation. Claim eight is to building cover material and does not require saturation. So the record is very clear on this, I think. And so we did argue this before the board. We did not challenge the board's claim construction on appeal because we didn't understand the board's claim construction to require that all roofing and building cover materials eventually have to be saturated. The issue before the board was what condition does this stuff have to be in when the tab material is applied? Fassfeldt argued, and their experts were very clear on this. They said that there are unique problems in applying tab material to hot substrate. That was the entire basis for both of their opinions, and that is the record support on which the board relied in its decision. And so that was the focus of the dispute about what roofing or building cover materials means. And the board resolved precisely the dispute the parties had presented, which is what condition does this have to be in at the time the nail I think you're confusing things by mixing up two separate points. There's the question of before and after, and if we look at the board's decision, it may be very difficult to say that they were wrong in saying that Lassiter taught away from both before and after. But there's the separate question whether siding materials and things like that, which are covered by the claim, have to be asphalt coated at all, at any time. And insofar as the board said we're limiting the claims to asphalt coated or said that the Lassiter taught away from asphalt coated, it's not directing itself to the central question of whether the claims are broader than asphalt But that's exactly right. The board did not consider the prior art in light of the full scope of these claims. That's the fundamental problem. The other problem is that the board did in fact point to the fact that there was no statement in Lassiter saying there's some problem that needs to be improved, which is inconsistent with KSR and this court's precedent. See them out of time, so if the court has no further questions. Thank you. Thank you. Thank you both.